# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCO ACEVEDO,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>RUSSELL CELLULAR, INC.,<br><br>　　　　Defendant. | Case No. 1:20-cv-01440-NONE-SAB<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS<br><br>(ECF Nos. 7, 9, 10, 13)<br><br>OBJECTIONS DUE WITHIN FOURTEEN DAYS |

Currently before the Court is Russell Cellular, Inc.'s motion to compel arbitration and stay this action which has been referred to the United Sates magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. (ECF No. 11.) The Court, having reviewed the record, finds this matter suitable for decision without oral argument. See Local Rule 230(g).

## I.

## BACKGROUND

Marco Acevedo ("Plaintiff") began working for Russell Cellular, Inc. ("Defendant") around November 11, 2019. (Decl. of Robert Lister ("Lister Decl.") ¶ 6, ECF No. 7-3.) In connection with his employment, Plaintiff electronically signed a Dispute Resolution/Binding Arbitration Agreement. (Id., ¶ 7.) The arbitration agreement provided,

　　In order to obtain an expeditious resolution of any disputes between Employee

1

and Employer and to avoid the costly expense and lengthy delays typically associated with court actions, the undersigned Employee and the Company agree to submit (with the exceptions noted in section 1(C) of this Agreement) any and all claims, disputes or controversies between them relating to employee's employment, wages, benefits, compensation or any other claim arising from Employee's hiring by, employment with, or the termination of Employee's employment with the Company to final and binding arbitration before a neutral arbitrator, and not to any court or a trial by jury or any other forum, regardless of whether these claims or controversies are found in contract or tort (including personal injury) or arise under statute.

(Dispute Resolution/Binding Arbitration Agreement ("Agreement"), ¶ 1, ECF No. 7-3 at 7.[1]) The Agreement included a nonexclusive list of covered claims which covers, as relevant here, claims under the Fair Housing and Employment Act ("FEHA"), California Labor Code, and any other federal, state or local laws, regulations, ordinances or constitutions relating to employment rights, benefits and obligations or discrimination or harassment and claims of wrongful termination or discharge. (Id., ¶ 1(B)(1)(3).)

The Agreement also provides that the execution of the Agreement is voluntary.

Employee understands that he or she would not be hired by the employer or be able to continue employment with employer if he or she did not sign this agreement.

The parties indicated below have carefully read this agreement in its entirety and fully understand its contents. Employee voluntarily enters into this agreement without reliance on any provisions of representations by employer other than those contained in this agreement. The parties understand that by entering into this agreement, they agree to and do hereby waive the right to have a court or jury decide disputes between them. The parties also understand that by entering into this agreement, they agree to the terms of Section 3 herein "Class Action Waiver."

Each party agrees to the use of Electronic Signatures and agrees that the Electronic Signatures of the parties included in this Agreement are intended to authenticate this writing and to have the same force and effect as manual signatures. "Electronic signature" means any electronic sound, symbol, or process attached to or logically associated with a record and executed and adopted by a party with the intent to sign such record.

By Employee's signature below, Employee affirms that he/she understands English and that if he/she does not, Employee affirms that he/she has had the opportunity to have someone that does understand English read and explain this document to Employee prior to signing it.

---

[1] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

(Id., ¶ 11.)  The Agreement contains Plaintiff's electronic signature, dated November 6, 2019 at 20:36:28 p.m.  (Id., p. 13.)  There is also an Acknowlegement of Receipt of Electronic Signature Policy and Authorization to Use Electronic Signature that was electronically signed by Plaintiff on this same date at 21:28:40.  (ECF No. 7-3 at 15.)

Plaintiff's employment with Defendant ended around June 1, 2020.  (Lister Decl., ¶ 6.)

On September 8, 2020, Plaintiff filed this action alleging violations of the FEHA, Labor Code, and wrongful termination in violation of public policy in the Superior Court for the State of California, County of Kings.  (ECF No. 1-3.)  On October 8, 2020, Defendant removed this matter to the Eastern District of California.  (ECF No. 1.)

On October 28, 2020, Defendant filed a motion to compel arbitration and stay proceedings this action.  (ECF No. 7.)  On November 10, 2020, Plaintiff filed an opposition to the motion.  (ECF No. 9.)  Defendant filed a reply on November 17, 2020.  (ECF No. 10.)  On February 25, 2021, the matter was referred to the magistrate judge for preparation of findings and recommendations.  (ECF No. 11.)  On March 5, 2021, an order issued and Defendant was ordered to file a declaration in support of the motion to arbitrate within seven days.  (ECF No. 12.)  On March 12, 2021, Defendant filed the supplemental declaration of Shaneque Watson-Dawkins in support of the motion to compel arbitration.[2]  (ECF No. 13.)

## II.

## LEGAL STANDARD

In 1925 the Federal Arbitration Act ("FAA") was enacted in response to judicial hostility to arbitration agreements.  AT&T Mobility LLC v. Concepcion (Concepcion), 563 U.S. 333, 339 (2011).  The primary provision of the FAA provides that a contract which evidences an intent to settle a controversy by arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in law for the revocation of any contract."  Concepcion, 563 U.S. at 339 (quoting 9 U.S.C. § 2).  The Supreme Court has found that "Section 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state

---

[2] The Court provided Defendant with the opportunity to supplement the record because the reply indicated that a declaration from Marquis Love would be filed as soon as it was reviewed and signed, but no such declaration had been filed.  Defendant has not filed the declaration of Mr. Love.

3

substantive or procedural policies to the contrary[,]" and the effect is to create a body of federal substantive law of arbitrability. Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24 (1983). The FAA places arbitration agreements on an equal footing with other contracts and requires the court to enforce such an agreement according to its terms. Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 67 (2010). "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

The court's role in deciding whether a dispute is arbitrable, is "limited to determining (1) whether a valid agreement to arbitrate exists; and if it does (2) whether agreement encompasses the dispute at issue." Chiron Corp. v. Ortho Diagnostic Sys., 207 F.3d 1126, 1130 (9th Cir. 2000)). If the party seeking to compel arbitration establishes these two factors then the court must compel arbitration. Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985) ("By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.") "To determine whether the parties formed an agreement to arbitrate, courts "apply ordinary state-law principles that govern the formation of contracts." Int'l Bhd. of Teamsters v. NASA Servs., Inc., 957 F.3d 1038, 1042 (9th Cir. 2020) (quoting First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995)). Questions of arbitrability are to "be addressed with a healthy regard for the federal policy favoring arbitration. . . . The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself  or an allegation of waiver, delay, or a like defense to arbitrability." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626-27 (1985) (quoting Moses H. Cone Memorial Hospital, 460 U.S. at 24–25).

Under California law, "[t]he party seeking arbitration bears the burden of proving the existence of an arbitration agreement, and the party opposing arbitration bears the burden of proving any defense, such as unconscionability." Pinnacle Museum Tower Assn. v. Pinnacle

4

1  Mkt. Dev. (US), LLC, 55 Cal.4th 223, 236 (2012).  "[T]he party seeking to compel arbitration,
2  has the burden of proving the existence of an agreement to arbitrate by a preponderance of the
3  evidence."  Knutson v. Sirius XM Radio Inc., 771 F.3d 559, 565 (9th Cir. 2014); Rejuso v.
4  Brookdale Senior Living Communities, Inc., No. CV175227DMGRAOX, 2018 WL 6174764, at
5  *4 (C.D. Cal. June 5, 2018).

6        The Court may consider evidence outside the pleadings on a motion to compel
7  arbitration.  Manuwal v. BMW of N. Am., LLC, 484 F.Supp.3d 862, 865 n.1 (C.D. Cal. 2020);
8  see also Arredondo v. Sw. & Pac. Specialty Fin., Inc., No. 1:18-CV-01737-DAD-SKO, 2019 WL
9  4596776, at *4-5 (E.D. Cal. Sept. 23, 2019) (considering evidence presented by the parties in
10 motion to compel arbitration); see also Hansen v. Rock Holdings, Inc., 434 F.Supp.3d 818, 824
11 (E.D. Cal. 2020) (considering motion to compel arbitration under standard similar to Federal
12 Rule of Civil Procedure 56.  "The party opposing arbitration receives the benefit of any
13 reasonable doubts and the court draws reasonable inferences in that party's favor.  Only when no
14 genuine disputes of material fact surround the arbitration agreement's existence may the court
15 compel arbitration.").

16       **III.**
17       **DISCUSSION**

18       Defendant contends that, as part of his employment, Plaintiff entered into a valid
19 arbitration agreement.  Defendant argues that Plaintiff had the opportunity to fully review and
20 electronically sign the arbitration agreement and signed an acknowledgement of receipt which
21 informed him that his electronic signature was held to the same standard as the legally binding
22 equivalent handwritten signature.  Plaintiff accessed these documents by signing into
23 Defendant's human resources management platform using his username and password.
24 Defendant argues that Plaintiff agreed to arbitrate his employment related claims and seeks an
25 order staying this action and compelling Plaintiff to participate in arbitration.

26       Plaintiff counters that he never agreed to arbitration and his supervisor created a
27 username and password and completed his onboarding paperwork for him while he was directed
28 to immediately begin his training.  Plaintiff also argues that the arbitration agreement is

procedurally unconscionable because he never had the opportunity to review the agreement and substantially unconscionable because the Federal Arbitration Act is unconstitutional and the California Constitution provides for due process and a trial by jury.

Defendant replies that the other probative evidence overwhelming refutes Plaintiff's claim that he did not complete his on boarding documents and sign the arbitration agreement. Defendant contends that Plaintiff has not presented any evidence to support that the arbitration agreement was procedurally unconscionable. Defendant also argues that Plaintiff has failed to demonstrate any substantive unconscionability. Defendant states that since the arbitration agreement which Plaintiff executed is fair and reasonable, Plaintiff must submit to arbitration in this matter. Finally, Defendant contends that if the Court were to find any offending terms, they could be severed and requests that the motion to compel arbitration be granted and this action be stayed until completion of arbitration.

### A. Jurisdiction

Defendant removed this action on the basis of diversity jurisdiction under 28 U.S.C. § 1332(a). (ECF No. 1.) Initially, the Court considers whether jurisdiction exists in this action.

Federal courts are courts of limited jurisdiction and their power to adjudicate is limited to that granted by Congress. U.S. v. Sumner, 226 F.3d 1005, 1009 (9th Cir. 2000). District courts have original jurisdiction of all civil actions between citizens of different States in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). This requires complete diversity of citizenship and the presence "of a single plaintiff from the same State as a single defendant deprives the district court of original diversity jurisdiction over the entire action." Abrego Abrego v. The Dow Chemical Co., 443 F.3d 676, 679 (9th Cir. 2006) (citations omitted).

Defendant's notice of removal states that Plaintiff is a citizen of the state of California for purposes of section 1332(a). (ECF No. 1 at ¶ 9.) For the purpose of determining diversity of citizenship, an individual is deemed to be a citizen of the state in which he or she is domiciled. Lew v. Moss, 797 F.2d 747, 749 (9th Cir. 1986). An individual's domicile is determined by "physical presence at a given location and an intent to remain there indefinitely." Lew, 797 F.2d

at 752. In his complaint, Plaintiff alleges that at all relevant times he was a California resident. (Compl. ¶ 1.) Plaintiff has not challenged the notice of removal and Defendant's allegation of citizenship and the Court finds that Plaintiff is a citizen of California.

A corporation is deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business. Lincoln Prop. Co. v. Roche, 546 U.S. 81, 94 (2005) (quoting 28 U.S.C. § 1332(c)(1)). Defendant is a Missouri corporation with its principle place of business in Missouri. (ECF No. 1 at ¶¶ 11-12.)

As Plaintiff is a citizen of California and Defendant is a citizen of Missouri complete diversity of citizenship exists in this action.

In a diversity action, the removing defendant has the burden of establishing the amount in controversy by a preponderance of the evidence. Rodriguez v. AT & T Mobility Servs. LLC, 728 F.3d 975, 977 (9th Cir. 2013); see also Ives v. Allstate Ins. Co., ___ F.Supp.3d ___, 2020 WL 7055492, at *1 (C.D. Cal. Dec. 1, 2020) (quoting Kenneth Rothschild Tr. v. Morgan Stanley Dean Witter Reynolds, Inc., 199 F.Supp.2d 993, 1001 (C.D. Cal. 2002)) ("Where a plaintiff's complaint does not specify the amount of damages being sought, the removing defendant bears the burden of demonstrating by a preponderance of the evidence that the amount in controversy requirement is satisfied."). "Under this burden, the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds that amount." Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996).

Defendant asserts that if plaintiff were to prevail on his claims at trial, his lost wages alone would likely exceed $75,000.00 considering his employer benefits contributions, commissions, and overtime. (Notice of Removal, ¶ 22(a), ECF No. 1.) Further, Defendant contends that penalties under California Labor Code § 98.6 would be $10,000.00; and, based on prior punitive damage awards, punitive damages could exceed $75,000.00. (Id., ¶¶ 22(c)(d), 23.) Defendant also argues that attorney fees in individual discrimination suits often exceed damages and it is reasonable to assume that Plaintiff's counsel will spend at least 150 hours litigating this

action through trial.³  (Id., ¶ 22(e)).  Defendant cites to a similar case in which Plaintiff's counsel was awarded $120,000.00 in attorney fees and costs.  (Id., ¶ 24.)  Finally, counsel cites to similar cases where damages awarded exceeded the jurisdictional limit.  (Id., ¶ 23.)

The Court finds that Defendant has established by a preponderance of the evidence that damages in this action meet the jurisdictional limit.  Diversity jurisdiction exists in this action.

### B. The Arbitration Agreement Covers the Claims in this Action

Defendant argues, and Plaintiff does not dispute that the arbitration agreement applies to Plaintiff's employment related claims in this action.

"[T]he FAA mandates that 'district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed[,],' " and limits the court's involvement to "determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue."  Cox v. Ocean View Hotel Corp., 533 F.3d 1114, 1119 (9th Cir. 2008) (quoting Chiron Corp., 207 F.3d at 1131).  The burden is on the party seeking to compel arbitration to show that both of these questions must be answered in the affirmative.  Ashbey v. Archstone Prop. Mgmt., Inc., 785 F.3d 1320, 1323 (9th Cir. 2015); Mayorga v. Ronaldo, ___ F.Supp.3d ___, 2020 WL 5821953, at *5 (D. Nev. Sept. 30, 2020), appeal dismissed, No. 20-17148, 2021 WL 296046 (9th Cir. Jan. 15, 2021).

Pursuant to Section 2 of the FAA, arbitration clauses in contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  Cox, 533 F.3d at 1121 (quoting 9 U.S.C. § 2).  Whether a valid arbitration agreement exists is governed by state law.  Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 630–31 (2009).  "Under the FAA, a party may challenge the validity or applicability of the arbitration provision by raising the same defenses 'available to a party seeking to avoid the enforcement of any contract'" and these "contract-based challenges are governed by applicable state law."  Cox, 533 F.3d at 1121 (quoting Brown v. Dillard's, Inc., 430 F.3d 1004, 1010 (9th Cir. 2005)).

---

³ Assuming that Plaintiff's counsel spent 150 hours litigating this action and was reimbursed at $300.00 per hour attorney fees would conservatively amount to $45,000.00.

1    Like federal law, California law favors enforcement of valid arbitration agreements.
2  Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal.4th 83, 97, (2000).  Under both
3  California and federal law, "an arbitration agreement may only be invalidated for the same
4  reasons as other contracts."  Armendariz, 24 Cal.4th at 98.  The Code of Civil Procedure
5  specifically defines the term "agreement," for purposes of the California Arbitration Act, as
6  including "agreements between employers and employees or between their respective
7  representatives." Cal. Civ. Proc. Code § 1280(a).

8    Here, the arbitration agreement specifies that all claims of employment discrimination
9  and wrongful termination including claims arising under the FEHA and California Labor Code
10 are subject to binding arbitration. (Arbitration Agreement, ¶ 1(B).)  The Court finds that the
11 arbitration agreement encompasses the claims at issue in this action.

12    **C.    Mutual Assent to the  Arbitration Agreement**

13    Defendant contends that Plaintiff reviewed and electronically signed the arbitration
14 agreement as part of their onboarding process.  Plaintiff counters that he did not review and sign
15 the arbitration agreement.

16    According to Plaintiff he was instructed to appear at the store to complete new employee
17 onboarding and to begin his training on November 6, 2019.  (Decl. of Marco Acevedo
18 ("Acevedo Decl."), ¶ 2.)  When he arrived on that date, the store manager Marquis Love told him
19 to begin his sales training and not to worry about the onboarding paperwork. (Id., ¶¶ 3, 4.)  Mr.
20 Love told Plaintiff that he would create a username and password for Plaintiff and would
21 complete all the onboarding paperwork for him. (Id., ¶ 4.)  Plaintiff contends that while he was
22 doing his training, Mr. Love appeared to be completing Plaintiff's onboard paperwork using a
23 username and password that Mr. Love created.  (Id., ¶ 5.)  Plaintiff states that he was not aware
24 of the arbitration agreement and did not sign, electronically or otherwise, the acknowledgement
25 or the arbitration agreement. (Id., ¶¶ 10, 11, 13, 15.)

26    Defendant counters that substantial evidence contradicts Plaintiff's statement that he did
27 not sign the arbitration agreement or acknowledgement.  In support of the motion and opposition,
28 Defendant submits two declarations of Robert Lister who has been employed as the Chief

1  Financial Officer ("CFO") of Defendant for approximately 19 years.  (Lister Decl., ¶ 3; Suppl.
2  Decl. of Robert Lister ("Lister Suppl. Decl."), ¶ 3, ECF No. 10-1.)  In his position as CFO, Mr.
3  Lister oversees the payroll functions and employee/personnel management at Defendant.  (Id.)
4  He has in-depth understanding of the employee on boarding and employment documents.  (Id.)
5  Mr. Lister has reviewed the employment records of Plaintiff and Mr. Love.  (Lister Suppl. Decl.,
6  ¶ 4.)

7    "[A]rbitration is a matter of contract[,] Knutson, 771 F.3d at 565, and the issue here is
8  whether the parties formed an agreement to arbitrate.  The essential elements of a contract under
9  California law are: "[1] parties capable of contracting; [2] the parties' consent; [3] a lawful
10 object; and [4] sufficient cause or consideration."  Johnson v. Altamirano, 418 F.Supp.3d 530,
11 550 (S.D. Cal. 2019), reconsideration denied, stay granted, No. 3:19-CV-01185-H-BLM, 2020
12 WL 487301 (S.D. Cal. Jan. 30, 2020) (quoting Lopez v. Charles Schwab & Co., 118 Cal.App.4th
13 1224, 1230 (2004)).  An essential element is mutual assent to the formation of the contract.
14 Knutson, 771 F.3d at 565; Johnson, 418 F.3d at 550.  " 'Mutual assent may be manifested by
15 written or spoken words, or by conduct,' Binder v. Aetna Life Ins. Co., 75 Cal.App.4th 832, 850
16 [ ] (1999), and acceptance of contract terms may be implied through action or inaction, see
17 Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 593–95 [ ] (1991)."  Knutson, 771 F.3d at
18 565.  Therefore, "an offeree, knowing that an offer has been made to him but not knowing all of
19 its terms, may be held to have accepted, by his conduct, whatever terms the offer contains."  Id.
20 (quoting Windsor Mills, Inc. v. Collins & Aikman Corp., 25 Cal.App.3d 987, 991, (1972)).  The
21 court "must determine whether the outward manifestations of consent would lead a reasonable
22 person to believe the offeree has assented to the agreement."  Knutson, 771 F.3d at 565 (quoting
23 Meyer v. Benko, 55 Cal.App.3d 937, 942–43 (1976)).

24   Plaintiff has not argued that the parties were not capable of contracting, that the
25 arbitration agreement was not related to a lawful matter, or that there was insufficient
26 consideration.  Rather, Plaintiff contends that he did not consent to the arbitration agreement.
27 Here, in support of his assertion that he did not agree to arbitrate the claims in this action
28 Plaintiff has submitted his declaration which Defendant contends is self-serving.  Defendant

submits evidence to contradict Plaintiff's statement that he did not sign the arbitration agreement. In "resolving a motion to compel, the district court sits as the fact-finder, weighing the evidence." Rejuso, 2018 WL 6174764, at *6 (citing Ruiz v. Moss Bros. Auto Grp., Inc., 232 Cal.App.4th 836, 842 (2014)).

The Ninth Circuit has "acknowledged that declarations are often self-serving, and this is properly so because the party submitting it would use the declaration to support his or her position." Nigro v. Sears, Roebuck & Co., 784 F.3d 495, 497 (9th Cir. 2015). "The district court can disregard a self-serving declaration that states only conclusions and not facts that would be admissible evidence." Nigro, 784 F.3d at 497. Further, "[a] conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." Id. at 498 (quoting F.T.C. v. Publ'g Clearing House, Inc., 104 F.3d 1168, 1171 (9th Cir. 1997)).) Plaintiff has submitted no evidence to support the self-serving statements in his declaration, and, for the reasons discussed herein, the Court finds that Defendant has submitted overwhelming evidence to refute Plaintiff's assertion that his supervisor, Mr. Love completed his onboarding documents while Plaintiff started his training.

Although Plaintiff states that Mr. Love created a username and password so that he could complete the onboarding documents, Mr. Lister asserts that the username and password that Plaintiff utilized to access the human resources management system is the same username and password that Plaintiff created and used to submit his employment application and execute his offer of employment. (Lister Suppl. Decl., ¶ 5.) In order to review the November 5, 2019 employment offer, Plaintiff had to enter his unique username and password into the human resources management system. (Id.) He was required to confirm his signature once he reviewed the offer of employment. (Id.) When Plaintiff acknowledged the offer of employment, a computer record was generated and embedded into the document was Plaintiff's name, a tamper-evident digital certificate number, and the date and exact time that he acknowledged and agreed to the document. (Id.) Plaintiff signed his offer of employment letter on November 5, 2019, at 14:46:49 hours. (Id.; November 5, 2019 Letter, attached as Exhibit E.)

Further, Plaintiff was sent a unique hyperlink with his onboarding documents, which

1  included the Dispute Resolution/Binding Arbitration Agreement, to his personal email address
2  that he provided as part of his employment application. (Lister Suppl. Decl., ¶ 6.) In order to
3  access the human resource portal, Plaintiff had to use the unique hyperlink. (Id.) Plaintiff then
4  was required to enter his personal username and password to review and execute the onboarding
5  documents, including the arbitration agreement. (Id.)

6  Although Plaintiff states that Mr. Love completed the documents while he completed
7  training on November 6, 2019, Defendant has presented evidence that neither Mr. Love nor
8  Plaintiff were working at the time that the onboarding documents were signed. Plaintiff's
9  employment records show that he worked at the store located at 75 W. Hanford Armona Road,
10 Suite D, in Lemoore, California during his entire employment with Defendant. (Id. ¶ 7.)
11 Plaintiff's employment records show that his first date worked was November 11, 2019; and
12 there is no record that he worked on November 6, 2019. (Id.) Defendant's policies require that
13 all non-exempt employees in the store record their time spent training as work hours on their
14 timesheet. (Id.) Further, the store's operating hours between November 5, 2019, and December
15 5, 2019, were from 9:00 a.m. to 7:00 p.m. from Monday through Saturday, and noon to 5:00 p.m.
16 on Sunday. (Id., ¶ 8.) It was not Defendant's practice to have any employee complete training
17 or execute onboarding documents at any store outside of store operating hours. (Id.)

18 Mr. Love's time records show that his work hours on November 6, 2019, were from 9:11
19 a.m. to 12:01 p.m. (Id., ¶ 8; Time & Attendance – Employee Timecard for Marquise Love,
20 attached as Exhibit F.) Contrary to Plaintiff's statement that Mr. Love completed the onboarding
21 documents during his shift on this date, the onboarding documents were signed after 9:00 p.m.
22 on this date after the store had closed and hours after Mr. Love had clocked out for the day.

23 Plaintiff's onboarding documents, including the arbitration agreement, were completed
24 on November 6, 2019. (Lister Suppl. Decl., ¶ 8, Attached as Exhibit G; Lister Decl., attached as
25 Exhibits A and B.) Plaintiff had to access these documents by signing into the system with his
26 unique username and password and had to confirm his assent to the arbitration agreement by
27 placing his initials on each page of the agreement. (Lister Suppl. Decl., ¶ 8; Exhibit A attached
28 to Lister Decl.) The signature acknowledgement was signed by Plaintiff on November 6, 2019,

12

1  at 21:28:40 and the arbitration agreement was signed on this same date at 21:36:28. (Id.;
2  Exhibits A and B attached to Lister Decl.)

3  Further, Mr. Lister states that through November 2019, newly hired employees required a
4  unique new hire id number to access and complete Defendant's online sales training program.
5  (Lister Suppl. Decl., ¶ 12.) This unique employee number is sent to the store manager who in
6  turn provides it to the employee. (Id.) Although Plaintiff alleges that he started his training on
7  November 6, 2019, Defendant's records show that Plaintiff's unique new hire number was not
8  sent to his supervisor until November 8, 2019. (Id.) Further, consistent with the offer of
9  employment, Plaintiff's time records demonstrate that the first day that he worked at the store
10 was November 11, 2019. (Id. ¶ 7; November 6, 2019 letter attached as Exhibit E.)

11 Although, Plaintiff contends that Mr. Love completed the onboarding documents during
12 his work hours on November 6, 2019, Mr. Love only worked until 12:00 that day and the
13 arbitration agreement was signed at 21:36:28 that day, after the store had closed and hours after
14 Mr. Love had clocked out for the day. Further, in order for the onboarding documents to be
15 completed, Plaintiff had to log into the unique link that was emailed to his personal email
16 address. Contrary to Plaintiff's assertion that he did his online training on November 6, 2019,
17 his unique new hire number was not provided to his supervisor until November 9, 2019. Finally,
18 consistent with the offer letter, Defendant's payroll records show that Plaintiff did not begin his
19 employment with Defendant until November 11, 2019. Defendant has proved by a
20 preponderance of the evidence that the arbitration agreement was signed by Plaintiff on
21 November 6, 2019, at 21:36:28 prior to his first day worked which was November 11, 2019.

22 The Court finds that Plaintiff signed the arbitration agreement and a valid agreement to
23 arbitrate was formed.

24 **D.  Unconscionability**

25 Plaintiff argues that the arbitration agreement is both procedurally and substantively
26 unconscionable. Defendant contends that the agreement is fair and reasonable and Plaintiff
27 should be required to submit his claims to arbitration.

28 The California Civil Code provides that "[i]f the court as a matter of law finds the

contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." Cal. Civ. Code § 1670.5(a). This provision applies to arbitration agreements. Peng v. First Republic Bank, 219 Cal.App.4th 1462, 1469 (2013), as modified (Oct. 2, 2013).

" '[U]nconscionability has both a "procedural" and a "substantive" element,' the former focusing on ' "oppression" ' or ' "surprise" ' due to unequal bargaining power, the latter on ' "overly harsh" ' or ' "one-sided" ' results." Peng, 219 Cal.App.4th at 1469 (quoting Armendariz, 24 Cal.4th at 114). Under California law both procedural and substantive unconscionability must "be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability.' " Peng, 219 Cal.App.4th at 1469 (quoting Armendariz, 24 Cal.4th at 114); see also Poublon v. C.H. Robinson Co., 846 F.3d 1251, 1260 (9th Cir. 2017) ("In order to establish such a defense, the party opposing arbitration must demonstrate that the contract as a whole or a specific clause in the contract is both procedurally and substantively unconscionable."). Procedural and substantive unconscionability need not be present to the same degree and the more of one type of unconscionability that is present the less evidence of the other type of unconscionability is required to find the agreement unenforceable. Peng, 219 Cal.App.4th at 1469.

1. Procedural Unconscionability

Plaintiff argues that the arbitration agreement is procedurally unconscionable because he was not informed of the agreement and did not have a chance to review it and sign it. However, for the reasons addressed *supra* at III.C, the Court finds that Defendant has demonstrated by a preponderance of the evidence that Plaintiff did review and sign the arbitration agreement.

Plaintiff further argues that procedural unconscionability is present because employees are required to sign the agreement without an opportunity to negotiate or change the requirement of the waiver of a jury trial.

The unconscionability analysis starts "with an inquiry into whether the contract is one of

adhesion." Armendariz, 24 Cal.4th at 113; see also Peng, 219 Cal.App.4th at 1462 (quoting Little v. Auto Stiegler, Inc., 29 Cal.4th 1064, 1071 (2003)) ("The procedural element of an unconscionable contract generally takes the form of a contract of adhesion. . . ."). "The term [contract of adhesion] signifies a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." Armendariz, 24 Cal.4th at 113; Peng, 219 Cal.App.4th at 1462. "The procedural element of unconscionability focuses on 'oppression or surprise due to unequal bargaining power.' " Poublon, 846 F.3d at 1260 (quoting Pinnacle Museum Tower Ass'n, 55 Cal.4th at 246). "California courts have held that oppression may be established by showing the contract was one of adhesion or by showing from the 'totality of the circumstances surrounding the negotiation and formation of the contract' that it was oppressive." Poublon, 846 F.3d at 1260 (quoting Grand Prospect Partners, L.P. v. Ross Dress for Less, Inc., 232 Cal.App.4th 1332, 1348, as modified on denial of reh'g (Feb. 9, 2015)).

Here, the Court finds that some procedural unconscionability is present as Plaintiff did not have the ability to negotiate the agreement. "It is well settled that adhesion contracts in the employment context, that is, those contracts offered to employees on a take-it-or-leave-it basis, typically contain some aspects of procedural unconscionability." Peng, 219 Cal.App.4th at 1470 (quoting Serpa v. California Surety Investigations, Inc., 215 Cal.App.4th 695, 704 (2013)). In such circumstances, courts recognize the reality that the employee has a lack of choice and "the potential disadvantages that even a fair arbitration system can harbor for employees." Armendariz, 24 Cal.4th at 115. But this is not dispositive, and courts observe that "[w]hen, as here, there is no other indication of oppression or surprise, 'the degree of procedural unconscionability of an adhesion agreement is low, and the agreement will be enforceable unless the degree of substantive unconscionability is high." Peng, 219 Cal.App.4th at 1470 (Serpa, 215 Cal.App.4th at 704). "The 'central idea' is that "the unconscionability doctrine is concerned not with a simple old-fashioned bad bargain but with terms that are unreasonably favorable to the more powerful party." Poublon, 846 F.3d at 1261 (quoting Baltazar v. Forever 21, Inc., 62 Cal.4th 1237, 1244 (2016)).

The Court finds that there is a modest amount of procedural unconscionability present here.

### 2. Substantive Unconscionability

Plaintiff argues that the arbitration agreement is substantively unconscionable because at the time that the Constitution was signed, judges would not enforce arbitration agreements unless both sides consented at the time of litigation.[4] For a contract to be substantively unconscionable the contract must be more than merely one-sided or overly harsh, and some courts have required the terms to be so one sided that they "shock the conscious." Peng, 219 Cal.App.4th at 1469. "Where a party with superior bargaining power has imposed contractual terms on another, courts must carefully assess claims that one or more of these provisions are one-sided and unreasonable." Id. (quoting Gutierrez v. Autowest, Inc., 114 Cal.App.4th 77, 88 (2003)). While substantive unconscionability "may take various forms," it is typically "found in the employment context when the arbitration agreement is 'one-sided' in favor of the employer without sufficient justification, for example, when 'the employee's claims against the employer, but not the employer's claims against the employee, are subject to arbitration." Peng, 219 Cal.App.4th at 1472–73 (quoting Little, 29 Cal.4th at 979 and Armendariz, 24 Cal.4th at 117).

The agreement here requires both parties to participate in binding arbitration for claims arising under the agreement. (Arbitration Agreement, ¶ 1.) Both parties have waived the right to seek resolution in any other forum, and have waived their rights to appeal, and either party may

---

[4] Plaintiff argues that the FAA is unconstitutional for the same reason. Plaintiff appears to argue that the FAA is unconstitutional because the agreement provides for a waiver of his right to a jury trial. Plaintiff has not cited any case law that would support an argument that the parties to an arbitration agreement could not agree to waive a jury trial. The "principal purpose" of the FAA is to "ensur[e] that private arbitration agreements are enforced according to their terms." Concepcion, 563 U.S. at 344 (quoting Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 478 (1989)). The Supreme Court has held that "[t]he preeminent concern of Congress in passing the Act was to enforce private agreements into which parties had entered "which requires that courts rigorously enforce agreements to arbitrate. Mitsubishi Motors Corp., 473 U.S. at 625-26 (quoting Dean Witter Reynolds Inc., 470 U.S. at 221).

Section 4 of the FAA "requires courts to compel arbitration 'in accordance with the terms of the agreement' upon the motion of either party to the agreement (assuming that the "making of the arbitration agreement or the failure ... to perform the same' is not at issue)." Concepcion, 563 U.S. at 344. "Like other constitutional rights, the right to a jury trial in civil suits can be waived." Palmer v. Valdez, 560 F.3d 965, 968 (9th Cir. 2009). Here, the parties agreed to have certain disputes resolved through arbitration and the Court finds Plaintiff has failed to allege any basis to find that the FAA is unconstitutional.

apply to a court of proper jurisdiction for a provisional remedy. (Id., ¶ 1(A).) Since the agreement applies equally to both parties in requiring arbitration of any claims, the Court does not find it to be so one sided or unreasonable that it would be found to be unconscionable.

The California Supreme Court has held that arbitration agreements are enforceable as to wrongful termination or employment discrimination claims if "the arbitration permits an employee to vindicate his or her statutory rights. Armendariz, 24 Cal. 4th at 91. Such vindication occurs where the arbitration meets certain minimum requirements, such as "neutrality of the arbitrator, the provision of adequate discovery, a written decision that will permit a limited form of judicial review, and limitations on the costs of arbitration." Id. at 90-91. Here, Plaintiff does not argue and the Court does not find any indication of substantive unconscionability as described in Armendariz.

Defendant argues that the minimum requirements of Armendariz are met here and the Court should find that the agreement is not substantively unconscionable. Defendant has presented evidence that the arbitration agreement provides that the claims will be arbitrated by a neutral arbitrator and the arbitration is to be controlled by the FFA in conformity with the procedures of the California Arbitration Act which includes the right to discovery and depositions. (Arbitration Agreement, ¶ 1(D).) Adequate discovery does not mean unfettered discovery, and the parties may "agree to something less than the full panoply of discovery provided in [a civil action]." Paxton v. Macy's W. Stores, Inc., No. 1:18-CV-00132-LJO-SKO, 2018 WL 4297763, at *8 (E.D. Cal. Sept. 7, 2018) (quoting Ferguson v. Countrywide Credit Indus., Inc., 298 F.3d 778, 787 (9th Cir. 2002) and Armendariz, 24 Cal. 4th at 105-06). Plaintiff has not argued or presented any evidence that such procedures would be unreasonable or inadequate to address the issues in this case.

Pursuant to the agreement, Defendant is responsible for the payment of the arbitrator fees and all costs unique to arbitration. (Arbitration Agreement, ¶¶ 1(D), 2.) The Supreme Court has held that even an arbitration agreement's silence on costs to be borne is insufficient to render the agreement unenforceable and the risk that the party "will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement." Green Tree Fin. Corp.-

Alabama v. Randolph, 531 U.S. 79, 91 (2000). Plaintiff has presented no evidence that he would be subjected to unreasonable costs in participating in litigation such that the agreement would be unconscionable.

Finally, the arbitrator is to issue a written decision summarizing the factual and legal issues and all types of relief that are otherwise available in court are available under the agreement. (Arbitration Agreement, 1(D).)

Plaintiff has failed to demonstrate that the arbitration is agreement is substantively unconscionable.

Under California law, an arbitration agreement is unconscionable only if it is both procedurally and substantively unconscionable. Peng, 219 Cal.App.4th at 146; Armendariz, 24 Cal.4th at 114. Here, the Court finds only a modest degree of procedural unconscionability and Plaintiff has not shown that the agreement is substantively unconscionable. Therefore, the Court finds that the arbitration agreement is valid and enforceable.

### E. Stay for Arbitration

Defendant seeks to stay this action while the parties submit the claims to arbitration. "Section 3 of the Federal Arbitration Act (FAA) entitles litigants in federal court to a stay of any action that is 'referable to arbitration under an agreement in writing.' " Arthur Andersen LLP, 556 U.S. at 625 (quoting 9 U.S.C. § 3); see also Concepcion, 563 U.S. at 344 ( Section 3 "requires courts to stay litigation of arbitral claims pending arbitration of those claims 'in accordance with the terms of the agreement"). Here, all claims raised in the complaint are required to be submitted to arbitration pursuant to the arbitration agreement. If the court "determines that all of the claims raised in the action are subject to arbitration, the court may either stay the action or dismiss it outright." Whitworth v. SolarCity Corp., 336 F.Supp.3d 1119, 1130 (N.D. Cal. 2018) (quoting Johnmohammadi v. Bloomingdale's Inc., 755 F.3d 1072, 1074 (9th Cir. 2014) (internal citations omitted). As Defendant seeks a stay of this matter for the parties to arbitrate Plaintiff's claims, the Court recommends that Defendant's motion to stay be granted.

///

## IV.

## CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the Court HEREBY RECOMMENDS that Defendant's motion to compel arbitration and stay these proceedings, filed October 28, 2020 be GRANTED.

This findings and recommendations is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within **fourteen (14) days** of service of this recommendation, any party may file written objections to this findings and recommendations with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **March 16, 2021**

UNITED STATES MAGISTRATE JUDGE